2003 WY 110

Dwayne Lee JOHNSON and Arlene Rae Johnson, husband and wife, Appellants (Defendants),

v.

David C. CREAGER, Appellee (Plaintiff).

No. 02–204.

Supreme Court of Wyoming.

Sept. 8, 2003.

Representing Appellants: Stacey E. Casper of Clapp and Associates, P.C., Casper, Wyoming.

Representing Appellee: Jerry A. Yaap of Bishop, Bishop & Yaap, Casper, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶1] Appellants, Dwayne and Arlene Johnson (Johnsons), seek review of the district court's order granting summary judgment in favor of Appellee, David Creager (Creager). The Johnsons bought a mobile home from Creager and, after they failed to make the required payments in a timely manner, Creager filed a complaint for replevin. Creager then filed a motion for summary judgment with a supporting affidavit. The Johnsons filed an untimely response to Creager's evidentiary materials, and the district court struck the response because it was filed late. The district court then found that there were no genuine issues of material fact, because there was no evidence to contradict Creager's affidavit, and that Creager was entitled to judgment as a matter of law. We will affirm.

## ISSUES

[¶2] The Johnsons pose these issues:

I. Whether the district court erred in granting [Creager's] motion for summary judgment.

    A. Whether the transaction in question is governed by the Uniform Commercial Code, Article 9, Secured Transactions.

    B. Whether equitable doctrines preclude [Creager] from entitlement to repossession.

Creager's summary of the issues is tersely stated as: "Whether the [district] court erred in granting [Creager's] motion for summary judgment."

## FACTS

[¶3] On August 7, 2000, the Johnsons bought a used mobile home from Creager. The transaction was recorded on what was entitled, "A Plain Language Purchase Agreement." The base price was $10,000.00, with the Johnsons making a $2,000.00 down payment. The agreement contained a notation that a "new water heater to be taken out of 1st payment—receipt to equal 500.00." Continuing, the agreement provided:

Terms are $2,000.00 down and 500.00 every other Friday starting 9–1–00 until the amount of $10,000 is fulfilled (if all payments are on time—[through] 3–29–01). No interest providing all payments are made on time. Payments are considered late as of Sunday following the due date at close of business for Oak Creek Village (5:00 p.m.). [If] 1st time payment is late interest goes to 21% on full original amount of loan (602.66 in interest). 2nd late payment home will be repossessed. Neither Dave Creager or Oak Creek Village implies or will stand behind any warranties for this home. Sale of home is as is where is—deposit is non-refundable at time of signing contract. Full $2,000.00 down in order to move home off our lot.

Title will remain in name of Dave Creager until full amount is paid off. Home shall remain at Blair Ln.—if it is to be moved notice in writing must be given to Dave Creager 30 days in advance for his approval or denial. $10,000 is as is where is. Customer is responsible for move and setting of home.

[¶ 4] On January 17, 2002, Creager filed a "Complaint for Replevin" in the district court alleging that the Johnsons had not made timely payments on the mobile home and seeking its return, as well as other damages and costs. On February 8, 2002, the Johnsons filed an answer and counterclaims. Their answer, as well as Creager's pleadings, established that, in addition to the $2,000.00 down payment, the Johnsons made various payments under the contract totaling $5,000.00, albeit not always within the time lines articulated in the contract. The Johnsons' affidavits asserted that all payments were made in accordance with Creager's directions, or that Creager acquiesced in the late payments, but that is not a part of the record on appeal. In addition, the Johnsons contended that Creager had breached an oral warranty to the effect that the trailer was "in working order." On May 8, 2002, Creager filed a motion for summary judgment with the affidavit of Creager attached. The affidavit recited the contract set out above, as well as the facts pertaining to the Johnsons' failure to make timely payments and that Creager was, therefore, entitled to a writ of replevin to regain possession of the mobile home. The motion for summary judgment was set for a hearing, to be held on July 10, 2002. On July 8, 2002, the Johnsons filed their brief in opposition to the motion for summary judgment, to which was attached the affidavits of the Johnsons contending that they had not breached the contract but that Creager had.

[¶ 5] The Wyoming Rules of Civil procedure provide:

Rule 56. **Summary Judgment.**

(a) *For claimant.*—A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) *For defending party.*—A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

(c) *Motion and proceedings thereon.*— **Unless the court otherwise orders, the motion and any response and other papers relating thereto shall be served pursuant to Rule 6(c). The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.** A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

(d) *Case not fully adjudicated on motion.*—If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

(e) *Form of affidavits; further testimony; Defense required.*—Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts

as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. **When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.**

(f) *When affidavits are unavailable.*— Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

(g) *Affidavits made in bad faith.*— Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

Rule 6. **Time.**

. . . .

(c) *Motions and Motion Practice.*—

(1) Unless these rules or an order of the court establish time limitations other than those contained herein, all motions, except

(A) motions for enlargement of time, (B) motions made during hearing or trial, (C) motions which may be heard ex parte, and (D) motions described in subdivisions (3) and (4) below, together with supporting affidavits, if any, shall be served at least 10 days before the hearing on the motion. **Except as otherwise provided in Rule 59(c), or unless the court by order permits service at some other time, a party affected by the motion shall serve a response, if any, together with affidavits, if any, at least three days prior to the hearing on the motion or within 20 days after service of the motion, whichever is earlier.** Unless the court by order permits service at some other time, the moving party shall serve a reply, if any, at least one day prior to the hearing on the motion or within 15 days after service of the response, whichever is earlier. Unless the court otherwise orders, any party may serve supplemental memoranda or rebuttal affidavits at least one day prior to the hearing on the motion.

(Emphasis added.)

■ [¶ 6] The Johnsons' papers resisting the motion for summary judgment were not filed in a timely manner under the above-quoted rules. As a result, Creager filed a motion to strike that pleading, and the district granted the motion. The district court then proceeded to hear argument on the motion for summary judgment, leaving out of consideration the Johnsons' evidentiary materials and only considering Creager's evidentiary materials. A district court does not abuse its discretion when it refuses to accept out-of-time affidavits. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* Civil 3d § 2719, at 321–22, n. 22 (1998).

[¶ 7] As the initial part of his argument below, Creager challenged the Johnsons' claim that Creager had given an express warranty as to the condition of the trailer by telling them it was "in working order". Creager's position in this regard relied on Wyo. Stat. Ann. § 34.1–2–316(c) (LexisNexis

2003).[1] Creager contended that the written contract was clear that the mobile home was sold "as is, where is." The cited statute provides:

**§ 34.1–2–316. Exclusion or modification of warranties.**

(a) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this article on parol or extrinsic evidence (section 34.1–2–202) negation or limitation is inoperative to the extent that such construction is unreasonable.

(b) Subject to subsection (c), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

(c) **Notwithstanding subsection (b) of this section:**

(i) **Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and**

(ii) **When the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and**

(iii) An implied warranty can also be excluded or modified by course of deal-ing or course of performance or usage of trade; and

(iv) The implied warranties of merchantability and fitness shall not be applicable to a contract for the sale of human blood, blood plasma or other human tissue or organs from an individual or a blood bank or reservoir of such other tissues or organs. Such blood, blood plasma or tissue or organs shall not for the purpose of this article be considered commodities subject to sale or barter, but shall be considered as medical services.

(v) With respect to the sale of cattle, hogs, sheep and horses, there shall be no implied warranty that the cattle, hogs, sheep and horses are free from disease.

(d) Remedies for breach of warranty can be limited in accordance with the provisions of this article on liquidation or limitation of damages and on contractual modification of remedy (sections 34.1–2–718 and 34.1–2–719).

(Emphasis added.) With respect to all other matters at issue, Creager simply maintained that the only evidentiary material before the district court was entirely favorable to Creager's complaint, that there were no genuine issues of material fact, and that he was entitled to judgment as a matter of law.

[¶ 8] Countering this approach, the Johnsons contended that, even in the absence of their evidentiary materials, Creager was not entitled to judgment as a matter of law. It was their view that Creager could not, or had not, properly proceeded under the statutes governing replevin (Wyo. Stat. Ann. §§ 1–15–301 through –306 (LexisNexis 2003)) and, further, that this matter was one governed by Article 9 of the Uniform Commercial Code–Secured Transactions (Wyo. Stat. Ann. §§ 34.1–9–101 through –709 (LEXIS 1999)). Continuing, the Johnsons contended that even accepting Creager's entire affidavit as true, he was not entitled to repossess the trailer, keep all of their $7,000.00 in payments, and collect other damages.

---

1. Although this case was considered under the version of the Uniform Commercial Code in effect at the time this matter arose, our citations will be to the current version if both are identical.

[¶ 9]   Looking only to the contract itself and Creager's affidavit, the district court determined that there were no genuine issues of material fact.   It also determined that replevin was an appropriate remedy in these circumstances and, although there had been some delay in Creager filing his action for replevin, neither laches nor waiver applied in these circumstances.   Thus, the district court returned the mobile home to Creager's possession, but did not award any further damages.

## STANDARD OF REVIEW

[¶ 10]   When we review a summary judgment, we have before us the same materials as did the district court, and we follow the same standards which applied to the proceedings below.   The propriety of granting a motion for summary judgment depends upon the correctness of the dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law.   *Reed v. Miles Land and Livestock Company,* 2001 WY 16, ¶ 9, 18 P.3d 1161, ¶ 9 (Wyo.2001).   A genuine issue of material fact exists when a disputed fact, if proven, would have the effect of establishing or refuting an essential element of an asserted cause of action or defense.   We, of course, examine the record from a vantage point most favorable to that party who opposed the motion, affording to that party the benefit of all favorable inferences that fairly may be drawn from the record.   *Scherer Construction, LLC v. Hedquist Construction, Inc.,* 2001 WY 23, ¶ 15, 18 P.3d 645, ¶ 15 (Wyo. 2001); *Central Wyoming Medical Laboratory, LLC v. Medical Testing Lab, Inc.,* 2002 WY 47, ¶ 15, 43 P.3d 121, ¶ 15 (Wyo.2002).

## DISCUSSION

[¶ 11]   The Johnsons take the position that replevin was not an available remedy under the circumstances of this case and that the only correct source of law to resolve this case is found in the Uniform Commercial Code (UCC).   We note at the outset that that view was not articulated to the district court during the proceedings below. Moreover, we are unable to agree with that foundational proposition.   The UCC is not intended to supplant remedies such as replevin.   Rather it serves to supplement them.   Wyo. Stat. Ann. § 34.1–1–103 (Lexis-Nexis 2003) provides:

**§ 34.1–1–103.   Supplementary general principles of law applicable.**

Unless displaced by the particular provisions of this act [§§ 34.1–1–101 through 34.1–10–104], the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

In the annotation to that statute, one of the purposes of the enactment is stated to be: "The listing given in this section is merely illustrative; no listing could be exhaustive. Nor is the fact that in some sections particular circumstances have led to express reference to other fields of law intended at any time to suggest the negation of the general application of the principles of this section." We have specifically held that the law of replevin has not been displaced by the UCC. *Brown v. Green,* 618 P.2d 140, 144 (Wyo. 1980); and *see Comer v. Green Tree Acceptance, Inc.,* 858 P.2d 560, 562–64 (Wyo.1993); and James J. White and Robert S. Summers, *Uniform Commercial Code,* § 25–8, at 898–99 (5th ed.   2000) ("A secured party, wishing to repossess by judicial action, has several means available.   For instance, it can bring an action in replevin, originally a common-law action, now largely codified.").   However, that does not necessarily mean that the UCC does not apply to some facets of a case such as this.

[¶ 12]   The Johnsons call our attention to Wyo. Stat. Ann. § 34.1–9–102 (LEXIS 1999) which provided:

(a) Except as otherwise provided in section 34.1–9–104 on excluded transactions, this article applies:

(i) To any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, in-

struments, general intangibles, chattel paper or accounts; and also

(ii) To any sale of accounts or chattel paper.

(b) This article applies to security interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, trust receipt, other lien or title retention contract and lease or consignment intended as security. This article does not apply to statutory liens except as provided in section 34.1–9–310.

(c) The application of this article to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this article does not apply.

The Johnsons further assert that the sale at issue here is governed by the UCC's provisions with respect to secured transactions and, because the Johnsons had paid more than 60% of the cash price, Creager was required to sell the mobile home and repay to them any surplus generated by that sale. Wyo. Stat. Ann. §§ 34.1–9–504 and 505 (LEXIS 1999). 4 James J. White and Robert S. Summers, *Uniform Commercial Code,* § 34–9, at 425–29, n. 9 (4th ed.1995).

[¶ 13] A careful review of the record on appeal reveals that this argument was not presented in the district court and so is of no force here with respect to our review of the district court's order granting the writ of replevin. Thus, we are compelled to conclude that the district court correctly determined that there were no genuine issues of material fact because, in effect, the Johnsons had no facts available to them that disputed any of the evidentiary material brought forward by Creager with respect to the replevin action. However, in resolving this appeal, we only affirm the trial court's order granting the writ of replevin. The district court did not purport to resolve issues with respect to disposition of the collateral after repossession had been accomplished. At the time this appeal was initiated, the 90–day period in which Creager would have been required to dispose of the trailer had not yet expired. Wyo. Stat. Ann. § 34.1–9–505(a) (LEXIS 1999). Therefore, our disposition of the in-stant appeal has no effect with respect to Creager's obligations in that regard.

 [¶ 14] We will make only brief mention of the Johnsons' claims that laches and waiver should have been applied by the district court to invalidate Creager's right to repossess the mobile home. These arguments are not supported by facts of record, nor are they supported by cogent argument or pertinent authority and we decline to address them further. *Walton v. State ex rel. Wood,* 2002 WY 108, ¶ 11, 50 P.3d 693, ¶ 11 (Wyo.2002).

## CONCLUSION

[¶ 15] The district court's order on summary judgment is affirmed.